IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MICHAEL HUBBARD,

               Plaintiff,

vs.                                Case No. 15-1237-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

               Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On January 24, 2014, administrative law judge (ALJ) Rhonda Greenberg issued her decision (R. at 12-23). Plaintiff alleges that he had been disabled since July 31, 2012 (R. at 12). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2015 (R. at

4

14).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since July 31, 2012 (R. at 14). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 14).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15).  After determining plaintiff's RFC (R. at 18), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 21).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 22-23). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23).

**III. Did the ALJ err in his consideration of the evidence before making her RFC findings?**

A medical source statement-mental from treating sources Dr. Jerkovich and Caryn Huslig, PAC, dated October 2013, opines that plaintiff is markedly limited in his: (1) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) ability to complete a normal workday without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and in his (3) ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  They also found

plaintiff moderately limited in 9 categories, including an ability to maintain concentration and attention for extended periods, work in coordination and proximity to others, interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers without distracting them or exhibiting behavioral extremes (R. at 610-611).  The ALJ gave limited weight to these opinions, finding that they are not fully supported by plaintiff's treatment records (R. at 20).

The ALJ also considered the opinions of two state agency assessments, Dr. Cohen and Dr. Fantz, who both opined in 2012 that plaintiff did not have a severe mental impairment (R. at 73-74, 86-87).  The ALJ considered their opinions at some length, but only gave some weight to their opinions, and concluded that plaintiff in fact had severe impairments of depression and anxiety (R. at 14, 16-17).  The ALJ made RFC findings that plaintiff can occasionally interact with supervisors, infrequently and incidentally interact with coworkers, meaning that he need not talk or listen to coworkers to perform job duties, and require no contact with the public (R. at 18).

The record also contains third-party statements from four persons dated in August 2013.  First, Frank Hubbard, plaintiff's uncle, stated that plaintiff tells stories, including his wife

cheating on him, and the police trying to take him from family. He indicated that the stories plaintiff tells are "off the wall" to ordinary people, but that he truly believed the things he said (R. at 311-312). Second, Kary Williams, plaintiff's cousin, gave a statement indicating that he always feels like someone is out to get him, that people have been in his house, and has accused her of plotting against him. She indicated she had to move out of the house because of not being able to deal with him (R. at 314-315). Third, Stacy Hall, plaintiff's sister, stated that his paranoia makes it hard for him to work with others because he thinks everyone is out to get him or that they are against him, including Ms. Hall (R. at 317).

Fourth, Jamie Hubbard, plaintiff's wife, stated that his paranoia is "a novel in its own"; she has been accused of cheating, working with the cops, and trying to get the kids against him. He thinks everyone is talking about him and are out to get him. They have been separated for a brief time due to his paranoia. Medications seem to help but his thoughts are still racing and not normal. If she comes home and states that her back hurts, plaintiff will decide that since her back hurts that she must have had sex with someone (R. at 319-320). The record also contains a function report from plaintiff's wife, prepared on July 4, 2012 (R. at 237-246). She indicated that he is sometimes paranoid about what a person wants or is thinking,

and stated that he has lost work because he is paranoid and has problems with being told what to do (R. at 244-245).  He also has trouble with completing tasks, concentration, and getting along with others; she noted he gets sidetracked easily (R. at 244).

Finally, the record contains a statement from a former employer, indicating that plaintiff did not get jobs done in a timely manner, and did not have acceptable attendance.  He was terminated and would not be rehired because of poor job performance and poor attendance (R. at 269-272).  The ALJ did not mention any of these statements in her decision.

In <u>Blea v. Barnhart</u>, 466 F.3d 903 (10th Cir. 2006), the ALJ failed to discuss or consider the lay testimony of the claimant's wife; the ALJ's decision failed to mention any of the particulars of the testimony of claimant's wife, and in fact, never even mentioned the fact that she did testify regarding the nature and severity of her husband's impairments.  The court held as follows:

> **In actuality, the ALJ is not required to make specific written findings of credibility only if "the written decision reflects that the ALJ considered the testimony."** <u>Adams</u>, 93 F.3d at 715. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he

> rejects." <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir.1996).
>
> **Here, the ALJ made no mention of Mrs. Blea's testimony, nor did he refer to the substance of her testimony anywhere in the written decision. Thus, it is not at all "clear that the ALJ considered [Mrs. Blea's] testimony in making his decision."** <u>Adams</u>, 93 F.3d at 715. Additionally, **Mrs. Blea's testimony regarding her husband's suicidal thoughts** is not only uncontroverted; it **serves to corroborate Dr. Padilla's psychiatric examination of Mr. Blea, where he stated that Mr. Blea has been dysthymic for years**. [citation to record omitted] **Thus, the ALJ's refusal to discuss why he rejected her testimony violates our court's precedent, and requires remand for the ALJ to incorporate Mrs. Blea's testimony into his decision. "Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion[s] ... [are] supported by substantial evidence**." <u>Threet</u>, 353 F.3d at 1190; <u>see also</u> <u>Baker v. Bowen</u>, 886 F.2d 289, 291 (10th Cir.1989) ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.").

<u>Blea</u>, 466 F.3d at 915 (emphasis added).

According to <u>Blea</u>, the ALJ, at a minimum, should indicate in his decision that he has considered the 3rd party testimony. Defendant concedes that the ALJ did not discuss these reports in her decision (Doc. 14 at 12). The statements from four third-party sources highlight plaintiff's paranoia, and could serve to corroborate the treating source opinion that plaintiff has a

marked limitation in his ability to complete a normal workday and workweek without interruption from psychologically based symptoms.  The report from the former employer indicates poor work performance (not getting work done in a timely manner) and poor attendance, and the report from plaintiff's wife notes difficulty with completing tasks and concentration, indicating that he gets sidetracked easily.  These reports could serve to corroborate the treating source opinion that plaintiff has a marked limitation in his ability to perform activities within a schedule, maintain regular attendance, and be punctual, and that plaintiff has a moderate limitation in his ability to maintain attention and concentration for extended periods.  For these reasons, the ALJ erred by failing to mention these five third-party statements.  The court does not find that this failure is harmless error.  The impact of these five third-party statements should be considered when determining what weight to give to the medical source opinions, and in making the RFC findings for the plaintiff.

     Plaintiff also alleges that the ALJ erred in the relative weight accorded to the medical source opinions, and whether sufficient evidence supported the ALJ's RFC findings.  These issues will not be addressed because they may be affected by the ALJ's resolution of the case on remand after the ALJ considers

the third party statements.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

    IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

    Dated this 2nd day of September 2016, Topeka, Kansas.


                      s/Sam A. Crow
                      Sam A. Crow, U.S. District Senior Judge